REYNOLDS, Appellee,

v.

SPICER n.k.a. Thomas, Appellant.

[Cite as *Reynolds v. Spicer,* 166 Ohio App.3d 485, 2006-Ohio-1817.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 05CA0052.

Decided April 7, 2006.

 ·

Douglas Geyer, for appellee.

Wolodymyr Strileckyj, for appellant.

GRADY, Presiding Judge.

{¶ 1} This appeal is taken from a judgment and order of the domestic relations division of the court of common pleas, enforcing a grandmother's right of visitation.

{¶ 2} The marriage of Joseph and Katherine Spicer was terminated on January 27, 1997, by a decree of dissolution granted by the Circuit Court of Jennings

County, Indiana. Custody of the parties' minor child, Justice, was awarded to Katherine.[1] The decree contains the following provisions concerning visitation:

{¶ 3} "Petitioner (Joseph Spicer) should enjoy the visitation as set forth in the Jennings Circuit Court Visitation Guidelines, attached hereto and made a part hereof. The Petitioner shall commence his visitation pursuant to the guidelines as parent 2 for 1997. Said visitation should be monitored by the grandmother until the child attains the age of Two (2) years.

{¶ 4} "Further, the grandmother should enjoy a week of visitation each and every summer, Memorial Day Weekend, and the third weekend in August each and every year until further order of this Court.

{¶ 5} "The parties should continue to meet at the northbound rest area of I–75 north of Cincinnati."

{¶ 6} The grandmother to whom the orders refer is Cynthia J. Spicer (n.k.a. Reynolds), Joseph's mother, who had intervened as a party in the dissolution proceeding pursuant to Indiana law to obtain grandparent visitation rights to visit with Justice.

{¶ 7} On October 25, 2004, the same Indiana court entered an "Order On All Pending Issues." The court found that it had continuing jurisdiction of issues concerning custody of Justice, that Joseph had died on July 18, 2004, and that Katherine had been duly served with a summons and subpoena to appear in connection with motions that were filed but had not appeared. The court then made the following findings and orders:

{¶ 8} "4. Prior to Joseph's death, when Joseph parented with Justice, it was nearly always done at Cindy's home. Apparently, Katherine knew this and approved of it. This was essentially every other weekend, holidays, etc. In fact, before Joseph's death, Joseph, Katherine, and Cindy enjoyed a very smooth and cordial relationship. As a result of Cindy seeing Justice every other weekend, she and Justice have become very, very close.

{¶ 9} "5. Nearly all of Cindy's immediate family (30 members or so), live in very close proximity and Justice knows and interacts with most of them.

{¶ 10} "6. Cindy is forty-eight (48) years of age and gainfully employed.

{¶ 11} "7. For some unknown reason after Joseph's death, Katherine has permitted only one (1) visit with Cindy in September, 2004. Cindy indicates Katherine will not speak to her or return her messages to call her about this matter. Thus, this Court has no evidence before it as to why Katherine has chosen to limit grandparenting time.

---

1. For clarity and convenience, the parties are identified by their first names.

{¶ 12} "8. Grandparenting time has duly been ordered in this case pursuant to IND. CODE § 31–17–5–1 et seq. Cathy is seeking modification under IND CODE § 31–17–5–7.

{¶ 13} "9. For at least the past six (6) years, Katherine and Joseph allowed Justice and Cindy to develop a very close bond; closer than most grandparent/grandchild bonds, because of the frequency with which Cindy saw Justice. Justice then tragically lost her father; she shouldn't now lose her grandmother too and her only connection with her paternal heritage.

{¶ 14} "10. It is in the best interest of Justice that Cindy have grandparenting time equivalent to the Indiana Parenting Time Guidelines, except that the summer time shall consist of two (2) consecutive weeks only. Exchange of Justice shall continue to be at the Taylorsville Road Exit off I–75 North in Ohio. Weekends shall commence on October 29, 2004."

{¶ 15} It is suggested that at some point in time Katherine and Justice moved from Indiana to Clark County, Ohio. The meeting requirement ("at the northbound rest area on I–75 north of Cincinnati") in the decree suggests that they had moved when the decree was entered. A copy of the October 25, 2004 order of the court indicates that a copy would be mailed to Katherine at a Clark County, Ohio address.

{¶ 16} The action underlying this appeal was commenced on December 13, 2004, by the grandmother, Cynthia J. Reynolds, who filed a two-prong motion in the domestic relations division of the common pleas court. One prong sought registration of the Indiana decree of dissolution of 1997 and the subsequent orders the Indiana court entered on October 25, 2004. The other prong asked the court to enforce the relief Reynolds was granted in the 2004 order, to have Justice for visitation for part of the Christmas holidays in 2004 pursuant to the guidelines of the Indiana court.

{¶ 17} Katherine filed a motion to dismiss and vacate Cynthia's motion. Both motions were referred to a magistrate for hearing and decision. On December 22, 2004, the magistrate entered a decision overruling Katherine's motion and accepting the proffered Indiana decree and orders and a copy of the Indiana court's visitation guidelines for registration and on that basis ordered Katherine to make Justice available for visitation with Cynthia from December 29 to December 30, 2004.

{¶ 18} Katherine filed objections to the magistrate's decision. The domestic relations court overruled the objections and adopted the magistrate's decision on April 7, 2005. Katherine filed a timely notice of appeal to this court.

### ASSIGNMENT OF ERROR

{¶ 19} "The magistrate erred as a matter of law and abused his discretion when he registered and sought to enforce in the same proceeding a decree from another state after finding that Ohio Revised Code § 3109.27 did not apply; by accepting for filing uncertified documents which were not accepted for filing by the clerk of courts; and by issuing a registration and modification decree as a matter of enforcement."

{¶ 20} We first address Katherine's argument that grandparent visitation orders are prohibited under the rule of *Troxel v. Granville* (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49.

{¶ 21} *Troxel* involved application of a Washington statute that provided: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." Id., 530 U.S. at 61, 120 S.Ct. 2054, 147 L.Ed.2d 49; Wash.Rev.Code 26.09.240.

{¶ 22} The Troxels were the paternal grandparents of two minor children born to Tommie Granville and Brad Troxel, who never married. After Brad Troxel's death, his parents sought an order for visitation with their two grandchildren pursuant to the Washington statute. The trial court granted the grandparents rights of visitation on a finding that the best interests of the children would be served.

{¶ 23} The Washington Court of Appeals reversed, holding that the statute, as applied, unduly interfered with Tommie Granville's parental rights. The Washington Supreme Court affirmed, holding that absent a showing of some harm to the child should visitation not be ordered, the statute deprived parents of a fundamental due process right.

{¶ 24} On review of the due process issue, the United States Supreme Court affirmed, but only on the narrow facts of the case. The court pointed out that by allowing "any person" to seek visitation rights that a parent opposed, the statute permitted a court, irrespective of the nature of a petitioner's interest, to overturn a parental decision "based solely on the judge's determination of the child's best interests." Id., 530 U.S. at 67, 120 S.Ct. 2054, 147 L.Ed.2d 49. Further, there was no showing that the mother was an unfit parent, so that her decision should be rejected. Finally, the trial court had instead improperly shifted the burden on the mother to show that the visitation the grandparents requested would harm the child. The Supreme Court expressly restricted its holding to those particular defects.

{¶ 25} Unlike the Washington statute, which allowed "any person" to seek visitation rights, Ind.Code 31–17–5–1 grants the right to a child's grandparents, but only if a parent is deceased, the parent's marriage was dissolved, or the child was born out of wedlock. Per Ind.Code 31–17–5–2, the court may grant visitation rights on a finding that it is in the child's best interest, taking into consideration whether the grandparent "has had or has attempted to have meaningful contact with the child." Id., at Subsection (b). However, the court must also "presume that a fit parent's decision is in the best interest of the child." *Crafton v. Gibson* (Ind.App.2001), 752 N.E.2d 78, 96. Acting under this presumption, trial courts must give special weight to a parent's decision to deny or limit visitation, and the court should also give some weight to the fact that a parent has agreed to some visitation. Id. However, a grandparent may rebut the presumption by showing that a decision made by a fit parent to deny or limit visitation is not in the child's best interest. Id.

{¶ 26} By applying these tests and standards, the Indiana statute avoids many of the due process weaknesses that the Supreme Court pointed out in *Troxel*. In any event, on this record, we cannot find a *Troxel* violation in the right of visitation with Justice that the Indiana court awarded Cynthia. Katherine does not argue that she opposed that visitation requirement when the decree of dissolution was entered, and according to the October 25, 2004 "Order On All Pending Issues," Katherine was served with notice of the proceeding in which Cynthia was granted greater rights of visitation, but Katherine failed to appear or oppose the relief requested. She cannot now complain that the Indiana court erred under the rule of *Troxel* when it granted that relief.

{¶ 27} This brings us to the two remaining issues that Katherine's assignment of error presents. Did the trial court err when it denied Katherine's motion to vacate and dismiss Cynthia's petition to register the Indiana decree and order? And if it did not err, may the Ohio court enforce the relief that Cynthia was granted in the Indiana decree and order?

{¶ 28} Katherine argues that the Indiana court lacked jurisdiction to enter the October 25, 2004 orders modifying the visitation provisions of its prior decree because she and Justice had moved from Indiana to Ohio some years before. Ind.Code 31–17–5–7 provides: "The court may modify an order granting * * * visitation rights whenever modification would serve the best interests of the child." The Indiana court thus exercised its continuing jurisdiction when it issued the October 25, 2004 modification order.

{¶ 29} Absent proof that the Indiana court had terminated or stayed its proceedings on a showing that Ohio is a more convenient forum, an Ohio court may not exercise original jurisdiction that it might otherwise have. R.C.

3127.20(A). The record contains no such indication. Therefore, at least for purposes of the jurisdiction of the Indiana court, it is immaterial that Katherine and Justice were no longer residents of that state when the court entered its October 25, 2004 orders.

{¶ 30} Next, Katherine argues that the trial court erred when it accepted the Indiana decree and orders for registration pursuant to R.C. 3109.32(A), which was in effect at the time, because Cynthia failed to comply with R.C. 3109.27(A)(1) through (4). Both provisions were subsequently repealed. Effective April 11, 2005, several days following the trial court's order, registration of foreign decrees is now governed by R.C. 3127.35, and the provisions of former R.C. 3109.27(A) now appear at R.C. 3127.23(A).

{¶ 31} Both R.C. 3127.23(A) and its prior version, R.C. 3109.27(A), require "[e]ach party in a child custody proceeding" to provide information relative to any other proceedings in which allocation of parental rights was ordered. We construe those provisions to apply to actions in which the original jurisdiction of an Ohio court to enter such orders is invoked and to require disclosure of information pertaining to other proceedings in which jurisdiction was invoked or relief was granted that could affect the Ohio Court's exercise of its jurisdiction. See *Pasqualone v. Pasqualone* (1980), 63 Ohio St.2d 96, 17 O.O.3d 58, 406 N.E.2d 1121. Reasonably, they have no application to requests that an Ohio court enforce relief granted in an action in another state that had jurisdiction to grant that relief. Therefore, the magistrate and the trial court correctly found that R.C. 3109.27(A), now R.C. 3127.23(A), had no application to the Indiana decree and order that Cynthia sought to register pursuant to R.C. 3127.35.

{¶ 32} The assignment of error is overruled. The judgment of the domestic relations court is affirmed.

Judgment affirmed.

BROGAN and FAIN, JJ., concur.