OPINION OF THE COURT
Ira B. Harkavy, J.
The constitutional issue presented to the court, as to the constitutionality of Domestic Relations Law § 72, is one of first impression in the State of New York.
Respondents move for an order pursuant to CPLR 3211 (a) (3) and (7) dismissing the verified petition in this proceeding on the grounds that the statute upon which the petition is *223 premised, Domestic Relations Law § 72, violates the Fourteenth Amendment to the United States Constitution, in accordance with the recent holding of the United States Supreme Court in the case of Troxel v Granville (530 US 57 [2000]).
The underlying proceeding was brought by petitioner grandfather, Sheldon Hertz, wherein he seeks an order of the court, pursuant to Domestic Relations Law § 72, to obtain visitation with his minor grandchildren.
Petitioner is the grandfather of 15 minor grandchildren delineated as follows: Michal Hertz, Avigail Hertz, and Avraham Hertz, the minor children of respondent Dov Hertz and respondent Suri Mayer Hertz; Adina Hertz, Yosef Hertz, Eliezer Hertz, Aharon Zvi Hertz, Yechiel Hertz, Gershon Chanoch Hertz, Yitzchok Hertz and Bayla Hinda Hertz, the minor children of respondent Moshe Hertz ánd respondent Suri Hertz; and Atara Segel, Menashe Segel, Gershon Dov Se-gel and Itzchak Mayir Segel, the minor children of respondent Danny Segel and respondent Shoshana Segel.
The statute at issue, section 72 of the Domestic Relations Law, provides:
“§ 72 Special proceeding or habeas corpus to obtain visitation rights in respect to certain infant grandchildren
“Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene, a grandparent or the grandparents of such child may apply to the supreme court by commencing a special proceeding or for a writ of habeas corpus to have such child brought before such court, or may apply to the family court pursuant to subdivision (b) of section six hundred fifty-one of the family court act; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.”
In Troxel v Granville (530 US 57, supra) the United States Supreme Court addressed the constitutionality of a non-parental visitation statute in the State of Washington. The Court held the statute invalid, on substantive due process grounds, as impermissibly interfering with the “fundamental *224 right of parents to make decisions concerning the care, custody, and control of their children.” (Troxel v Granville, supra, 530 US, at 66.) The Supreme Court’s reasons for finding the Washington State court’s intervention to be unconstitutional included the State court’s failure to give any special weight to the parent’s determination of the child’s best interest, and that there was no requirement that the parent be shown to be unfit. The Court expressly declined to reach the question of whether parental unfitness was always a prerequisite in order to justify intervention in decisions concerning custody and visitation. It also suggested that intervention in custody and visitation decisions might be justified when the intervention was “founded on * * * special factors,” rather than merely a best interest analysis. (Troxel v Granville, supra, 530 US, at 68.)
The within matter falls squarely within the Supreme Court’s decision in Troxel v Granville (supra). In Troxel, Tommie Gran-ville and Brad Troxel had two daughters. In May 1993, Brad Troxel committed suicide. In December 1993, Brad’s parents, Jenifer and Gary Troxel, petitioned the Washington Superior Court for Skagit County for the right to visit their two granddaughters, pursuant to section 26.10.160 (3) of the Revised Code of Washington, which stated: “Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.”
The Troxels had requested two weekends of overnight visitation per month and two weeks of visitation during the summers. Granville did not oppose visitation, and conceded that grandparent visitation was in the best interests of the children, but instead asked the court to order one day of visitation per month with no overnight stay. The Superior Court granted the Troxels visitation one weekend per month, one week during the summer, and four hours on the Troxels’ birthdays. Granville appealed to the Washington Court of Appeals, which reversed the lower court’s decision and dismissed the petition, holding that the Troxels lacked standing. The Troxels appealed to the Washington Supreme Court, which held that although the Troxels had standing to seek visitation, section 26.10.160 (3) of the Revised Code of Washington was unconstitutional on two grounds. First, the statute failed to require a showing of harm or potential harm to the child, which is required before *225 the State can interfere with parents’ rights to rear their children, and second, the statute is too broad.
The United States Supreme Court affirmed the Washington Supreme Court’s decision based on the “sweeping breadth of [the Washington statute] and the application of that broad, unlimited power in this case.” (Troxel v Granville, supra, 530 US, at 73.) The Supreme Court described the parental rights at issue in this case as the “oldest of the fundamental liberty interests recognized by this Court” (supra, 530 US, at 65), and held that the Washington statute, as applied to Granville and her family, unconstitutionally violated her due process right to make decisions concerning the care, custody and control of her daughters. The Court emphasized that the Troxels did not allege, and no court found, that Granville was an unfit parent. Therefore, Granville was entitled to the presumption that she acted in the best interests of her children. In addition, the Court noted that Granville did not oppose visitation altogether.
The Supreme Court decision did not decide whether a showing of harm or potential harm to the child was required prior to granting visitation. They also did not define the “precise scope” of parental due process rights, and did not hold that the Washington statute violated the Due Process Clause per se. The majority of the Court recognized that much State-court adjudication in this context occurs on a case-by-case basis and agreed with Justice Kennedy that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied.
We now turn to the specific facts herein, vis-a-vis the New York statute. Firstly, the subject children herein are not orphans. Therefore, the petition is not predicated on the first category of children delineated in the statute, but rather on the other category of children, “where circumstances show that conditions exist which equity would see fit to intervene.” (Domestic Relations Law § 72.) Additionally, all of the respondent parents submit affirmations wherein they vigorously oppose the granting of visitation to petitioner. They are firmly united in the decision not to allow their children to see the petitioner. Further, there is no allegation that any of the respondents are unfit parents. As a matter of fact, petitioner acknowledges that the respondents, “have been adequate parents in many respects.” The respondents in this case are a prime example of parents whose Fourteenth Amendment rights the Supreme Court seeks to protect.
*226 As stated, in the Troxel decision, “[The Washington statute] contains no requirement that a court accord the parent’s decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent’s estimation of the child’s best interests, the judge’s view necessarily prevails.” (Troxel v Granville, supra, 530 US, at 67.)
Similarly, Domestic Relations Law § 72 contains no requirement that a court accord a parent’s decision any presumption of validity and permits the court to impose its own best interests standard. It ultimately allows the court to ignore the wishes of a parent and substitute its own judgment for that of the parent.
There are, of course, differences between the Troxel case (supra) and the instant matter. First, the Washington statute allows “any person” to petition for visitation rights, whereas the New York statute allows only grandparents to petition for visitation rights. The difference between the statutes does not alter the analysis because, even though the New York statute is narrower than Washington’s “breathtakingly broad” statute, the Supreme Court’s holding in Troxel was not decided on the fact that “any person” could petition for visitation, but rather, was decided on grandparents seeking visitation rights. Second, the respondents herein oppose any court-ordered visitation, whereas Granville sought a lesser amount of visitation than the Troxels.
This court is of the opinion that the investiture of visitation rights in a party would seem to intrude and actually intrude more severely upon parental autonomy than does setting a schedule of visitation. That there are factual differences between the cases does not alter the opinion that the Supreme Court’s decision in Troxel (supra) controls in this case.
Accordingly, based upon all of the foregoing, the statute, section 72 of the Domestic Relations Law, is deemed unconstitutional in that it violates the respondents’ due process rights, specifically, their “fundamental right to make decisions concerning the care, custody, and control of their children” (Troxel v Granville, 530 US 57, 66, supra).
The petition is dismissed.