Nancy CRAFTON, Appellant–Respondent,

v.

Ada E. GIBSON, Appellee–Petitioner.

No. 40A04–0011–CV–490.

Court of Appeals of Indiana.

July 11, 2001.

Karen A. Wyle, Bloomington, IN, Robert E. Marshall, Shelbyville, IN, Attorneys for Appellant.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Nancy ˙ Crafton (Crafton), appeals the trial court's Order denying her Motion for Relief from Judgment filed pursuant to Ind.Trial Rule 60(B)(7) which requested relief from the trial court's judgment granting grandparent visitation to Appellee–Petitioner, Ada E. Gibson (Gibson).

We reverse and remand with instructions.

### ISSUE

Crafton raises several issues on appeal, which we consolidate and restate as one issue: whether, under the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the trial court erred in not granting Crafton's T.R. 60(B)(7) Motion for Relief from Judgment.

### FACTS AND PROCEDURAL HISTORY

Crafton and Ronald A. Bowling (Bowling) are the biological parents of two daughters, P.L.B, born February 20, 1994, and D.J.B., born August 1, 1995. Crafton and Bowling were married after the children were born. Their marriage was subsequently dissolved in 1997 and Crafton was awarded custody of the children.

Gibson is Bowling's mother and P.L.B.'s and D.J.B.'s paternal grandmother. On September 30, 1997, Gibson filed a Petition for Grandparent Visitation. A hearing was held on Gibson's Petition on April 1, 1998, and on April 7, 1998, the trial court issued an Order granting Gibson's Petition. The trial court's Order found that although Bowling had not exercised his visitation, Gibson and Crafton had enjoyed a "fairly decent relationship" and that Gibson had a close relationship with her two granddaughters but had not had much contact with them since July 1997. (R. 47). The trial court noted that Gibson claimed that Crafton would not permit any meaningful contact between her and the girls. The trial court concluded that it

would be in P.L.B.'s and D.J.B.'s best interest to have grandparent visitation with Gibson. The trial court ordered that Gibson be allowed the following visitation with her grandchildren:

> a. One weekend per month from Saturday at 9:30 a.m. to Sunday at 6:00 p.m. This weekend shall be selected by [Gibson] with notice to [Crafton] by the third day of every month commencing April, 1998 (except for April, 1998, this notice shall be due by April 11, 1998).
>
> b. From 9:30 a.m. on December 27 through December 30 at 9:30 a.m. commencing December 27, 1998.
>
> c. The Saturday following each grandchild's birthday, if [Gibson's] work schedule allows, from 9:30 a.m. to 4:00 p.m. If the grandchild's birthday is on Saturday, the visit shall occur on Sunday.
>
> d. One week each summer from August 2 through August 9 commencing August 2, 1998, or any other week agreed upon by [Gibson] and [Crafton] *in writing.*

(R. 47 (emphasis in original)).

On April 22, 1999, the Shelby Circuit Court granted a petition to adopt P.L.B. and D.J.B. filed by their stepfather, Joseph Robert Crafton. The Decree of Adoption found that Bowling had failed to see, support or communicate with the children for a period of over one year prior to the filing of the adoption petition and as a result the Shelby Circuit Court terminated Bowling's parental rights. However, under Ind.Code § 31–17–5–9,[1] Gibson's grandparent visitation rights survived the adoption of the children by their stepfather.

On June 5, 2000, the United States Supreme Court issued its decision in *Troxel,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49. In a plurality decision, the Supreme Court concluded that the Washington State statute, Wash.Rev.Code § 26.10.160(3),[2] under which the Troxels were granted visitation with their paternal grandchildren, was unconstitutional as applied because it violated the children's mother's (Granville) due process right to make decisions regarding the care, custody and control of her children. *Troxel,* 530 U.S. at 75, 120 S.Ct. 2054. Based on this decision by the Supreme Court, on September 19, 2000, Crafton filed a Motion for Relief from Judgment pursuant to T.R. 60(B)(7). Crafton argued that under the *Troxel* decision, the trial court's Order granting Gibson grandparent visitation was no longer equitable. More specifically, Crafton argued that in reaching its decision granting Gibson grandparent visitation, the trial court failed to apply a presumption that Crafton's decision to limit or deny Gibson visitation was in her daughters' best interest.

A hearing was held on this Motion on October 11, 2000, and the trial court issued its Order denying this Motion on October 25, 2000. In its Order, the trial court distinguished Indiana's Grandparent Visitation statute, Ind.Code § 31–17–5–1,[3] from

---

**1.** Ind.Code § 31–17–5–9(1) provides: "Visitation rights provided for in section 1 or 10 of this chapter survive the adoption of the child by any of the following: (1) A stepparent."

**2.** Wash.Rev.Code § 26.10.160(3) provides as follows: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances."

**3.** I.C. § 31–17–5–1 provides:
(a) A child's grandparent may seek visitation rights if:
(1) the child's parent is deceased;
(2) the marriage of the child's parents has been dissolved in Indiana; or
(3) subject to subsection (b), the child was born out of wedlock.

the Washington statute discussed in the *Troxel* decision. The trial court concluded that Indiana's statute was much narrower in scope than the Washington statute which the *Troxel* court found to be "breathtakingly broad." *Id.*, 530 U.S. at 67, 120 S.Ct. 2054. Further, the trial court noted that the *Troxel* decision was based solely on the Washington statute and limited to the facts of that case. Moreover, the trial court concluded that even under a *Troxel* analysis, its previous decision granting Gibson grandparent visitation was well supported by the evidence.

This appeal followed.

## DISCUSSION AND DECISION
### *Standard of Review*

■ Initially, we note that Gibson did not file a response brief. When an appellee fails to file a response brief, we need not develop her arguments. *Santana v. Santana,* 708 N.E.2d 886, 887 (Ind.Ct.App. 1999). "However, this circumstance in no way relieves us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required." *Blunt–Keene v. State,* 708 N.E.2d 17, 19 (Ind.Ct.App.1999). Rather, we apply a less stringent standard of review in which we may reverse the trial court if the appellant makes a *prima facie* showing of reversible error. *Id.* "Prima facie in this context is defined as 'at first sight, on first appearance, or on the face of it.' Where an appellant is unable to meet this burden, we will affirm." *Id.* (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell,* 484 N.E.2d 989, 991 (Ind.App.1985)).

Crafton's Motion for Relief from Judgment was filed pursuant to T.R.60(B)(7). T.R. 60(B)(7) provides as follows:

> (b) A court may not grant visitation rights to a paternal grandparent of a child who is born out of wedlock under subsection (a)(3)

On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

\* \* \*

(7) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; . . .

■ This court has determined that T.R. 60(B)(7) is an appropriate procedural mechanism for seeking relief from judgments of prospective application when the law has subsequently changed. *Saint Joseph's Hosp. of South Bend, Inc. v. Women's Pavilion of South Bend, Indiana, Inc.,* 451 N.E.2d 1126, 1130 (Ind.Ct.App. 1983); *see also Kaminsky v. Medical Licensing Bd. of Indiana,* 511 N.E.2d 492, 498 (Ind.Ct.App.1987). Here, the judgment at issue—the April 7, 1998 Order granting Gibson grandparent visitation—is a judgment of prospective application as it continues to order visitation into the future. The parties have the continuing obligation to comply with the Visitation Order and the trial court has the continuing jurisdiction to enforce and/or modify the Order, and to punish the parties for noncompliance with the Order. Thus, if the law with regard to this Order has subsequently changed, then T.R. 60(B)(7) is an appropriate procedural method to seek relief from the Order.

■ A trial court's ruling with regard to a T.R. 60(B) motion is addressed to the

> if the child's father has not established paternity in relation to the child.

court's equitable discretion. *Lake County Trust No. 3190 v. Highland Plan Com'n,* 674 N.E.2d 626, 628 (Ind.Ct.App.1996), *trans. denied.* In making its decision, the trial court is required to "balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation." *Chelovich v. Ruff & Silvian Agency,* 551 N.E.2d 890, 892 (Ind. App.1990). We review a trial court's grant or denial of a T.R. 60(B) motion under an abuse of discretion standard of review. *Indiana Ins. Co. v. Insurance Co. of North America,* 734 N.E.2d 276, 278 (Ind.Ct.App. 2000), *reh'g denied, trans. denied.* "An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inference supporting the judgment for relief." *Weppler v. Stansbury,* 694 N.E.2d 1173, 1176 (Ind.Ct.App.1998).

Here, Crafton asserts that the trial court erred in denying her Motion for Relief from Judgment filed pursuant to T.R. 60(B)(7). Specifically, Crafton contends that based on the *Troxel* decision, under T.R. 60(B)(7), the trial court was required to rescind its previous Order granting Gibson grandparent visitation as the Order was no longer equitable.

### Troxel v. Granville

As we have mentioned, Crafton's argument is based upon the United States Supreme Court's decision in *Troxel,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49. Thus, a thorough discussion of the *Troxel* decision is necessary before we proceed to our analysis of the case before us today. *Troxel* is a plurality decision in which Justice O'Connor wrote the Court's opinion. Chief Justice Rehnquist, and Justices Ginsburg and Breyer joined in the plurality opinion. Justices Souter and Thomas filed concurring opinions while Justices Stevens, Scalia and Kennedy filed dissent-

ing opinions. The facts of the *Troxel* case are relatively straightforward. Granville was in a relationship with the Troxel's son, Brad, that produced two children. *Id.* at 60 (O'Connor, J., plurality opinion). After Brad and Granville ended their relationship in 1991, Brad moved into his parents' home and regularly brought the children there for visitation. *Id.* Brad committed suicide in May 1993. *Id.* After Brad's death, the Troxels continued to see the children on a regular basis, but in October 1993, Granville informed the Troxels that she wished to limit their visitation to one short visit per month. *Id.* at 60–61. Thereafter, in December 1993, the Troxels filed a petition seeking visitation with the children under Wash.Rev.Code § 26.10.160(3). *Id.* at 61.

At trial, the Troxels requested two weekends of overnight visitation per month and two weeks of visitation during the summer. *Id.* Granville was willing to agree to one day of visitation per month with no overnight visits. *Id.* The trial court issued a decree in which the Troxels were awarded one weekend of visitation per month, one week over the summer and four hours on both of the petitioning grandparents' birthdays. *Id.* The trial court found that visitation was in the best interests of the children, that the children would benefit by spending quality time with the Troxels, and that the grandparents are part of a large, loving family and would be able to expose the children to their cousins and music. *Id.* at 61–62.

Granville appealed this decision to the Washington Court of Appeals. The Court of Appeals reversed the trial court and found that nonparents lacked standing to seek visitation under Wash.Rev.Code § 26.10.160(3) unless a custody action is pending. *Troxel,* 530 U.S. at 62, 120 S.Ct. 2054 (O'Connor, J., plurality opinion). Thereafter, the Washington Supreme

Court granted the Troxels' petition for review and consolidated this case with two other nonparent visitation cases.[4] Although the Washington Supreme Court disagreed with the Court of Appeals analysis in this case, it affirmed the Court of Appeals holding that it was improper to grant the Troxels visitation with Granville's children. *Troxel*, 530 U.S. at 62–63, 120 S.Ct. 2054 (O'Connor, J., plurality opinion). The Washington Supreme Court's disagreement with the Court of Appeals concerned whether the Troxels had standing to seek visitation under the statute, the Washington Supreme Court concluded that they did. *Id.* However, the court further found that under the Federal Constitution, the visitation statute "unconstitutionally infringe[d] on the fundamental rights of parents to rear their children." *Id.* at 63.

The Washington Supreme Court found two problems with the statute. "First, according to the Washington Supreme Court, the Constitution permits a State to interfere with the rights of parents to rear their children only to prevent harm or potential harm to a child." *Id.* Because the visitation statute required no showing of harm, the Washington Supreme Court determined that the statute failed this standard. Secondly, the Washington Supreme Court found the statute to be too broad because the statute allows " 'any person to petition for forced visitation of a child at any time with the only requirement being that the visitation serve the best interest of the child.' " *Id.* (quoting *In Re Custody of Smith*, 137 Wash.2d at 20, 969 P.2d at 30 (citing Wash.Rev.Code § 26.10.160(3))). The court reasoned that it is not within a State's authority to make important child custody and visitation decision simply because a "better" decision might be made by the State than by the parent. Between parents and judges, the court maintained, " 'the parents should be the ones to choose whether to expose their children to certain people or ideas.' " *Id.* (quoting *In Re Custody of Smith*, 137 Wash.2d at 20, 969 P.2d at 30).

The United States Supreme Court granted *certiorari* in this case and affirmed the Washington Supreme Court's decision. *Id.* The Supreme Court began its opinion by discussing the changing demographics of American families and noting that the enactment of nonparental visitation statutes are in some measure due to recognition of these changes. *Id.* at 64. "Because grandparents and other relatives undertake duties of a parental nature in many households, States have sought to ensure the welfare of the children therein by protecting the relationships those children form with such third parties." *Id.* Nonetheless, the Court noted that there are costs involved in the extension of these statutory rights since they burden the traditional parent-child relationship. *Id.*

The Supreme Court reiterated the long standing principle that the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody and control of their children. *Id.* at 66.[5] The Court noted that this right is based on

**4.** The *Troxel* case, *In Re Visitation of Troxel*, was consolidated with *In Re the Custody of Smith* and *In Re the Visitation of Walcott*. *See In Re the Custody of Smith*, 137 Wash.2d 1, 969 P.2d 21 (1998).

**5.** A majority of the justices agreed with this principle. *Id.* at 65, 66, 120 S.Ct. 2054

(O'Connor, J., plurality opinion); *Id.* at 77, 120 S.Ct. 2054 (Souter, J, concurring opinion); *Id.* at 80, 120 S.Ct. 2054 (Thomas, J., concurring opinion); *Id.* at 87, 120 S.Ct. 2054 (Stevens, J., dissenting opinion); *Id.* at 95, 120 S.Ct. 2054 (Kennedy, J., dissenting).

extensive case precedent and "is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* at 65 (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). *See also Pierce v. Society of Sisters,* 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wisconsin v. Yoder,* 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Parham v. J.R.,* 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Washington v. Glucksberg,* 521 U.S. 702, 719, 117 S.Ct. 2258 (1997).

Thus, the Supreme Court held that the Washington nonparental visitation statute, as applied to Granville, unconstitutionally infringes on this fundamental parental right. *Troxel,* 530 U.S. at 66, 120 S.Ct. 2054 (O'Connor, J., plurality opinion). The Court concluded that the statute was "breathtakingly broad" and the Court stated that:

> According to the statute's text, "[a]ny person may petition the court for visitation rights at any time," and the court may grant such visitation rights whenever "visitation may serve the best interest of the child." § 26.10.160(3) (emphasis added). That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest in accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn a decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

*Id.* at 67, 120 S.Ct. 2054.

The Court noted that no court had found Granville to be an unfit parent and that this factor is important because there is a "presumption that fit parents act in the best interests of their children." *Id.* at 68, 120 S.Ct. 2054 (citing *Parham,* 442 U.S. at 602, 99 S.Ct. 2493). However, the Court further stated that the problem is not that the trial court intervened "but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests." *Id.* at 69, 120 S.Ct. 2054. Furthermore, the Supreme Court was concerned that the trial court applied an opposite presumption by assuming that unless it could be shown to adversely affect the children, that the visitation with the grandparents was in the children's best interest. *Id., but see id.* at 82 n. 3, 90, 120 S.Ct. 2054 (Stevens, J., dissenting). Thus, the Court concluded that the trial court's "presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69–70, 120 S.Ct. 2054. Consequently, the Supreme Court concluded that a trial court must give at least some special weight to a fit parent's determination with regard to nonparental visitation. *Id.* at 70, 120 S.Ct. 2054.

The Supreme Court also noted that the trial court gave no weight to the fact that Granville had assented to some visitation. The dispute was not over whether the Troxels could have visitation, but over how much visitation they should receive. The Court noted that this is significant because many state statutes do not even allow a visitation order for a nonparent unless a parent has denied or unreasonably denied visitation. *Id.* at 71, 120 S.Ct. 2054 (citing *e.g.,* Miss.Code.Ann. § 93–16–3(2)(a)(1994); Ore.Rev.Stat. § 109.121(1)(a)(B)(1997); and R.I.Gen.Laws 15–5–24.3(a)(2)(iii)(iv) (Supp.1999)). The Supreme Court held that the combination of these factors, the presumption given in favor of the grandparents rather than the parent, the failure to give significant weight to the mother's offer of visitation, and the trial court's slender findings, demonstrate that the visitation order in this case was unconstitutional. *Id.* at 72, 120 S.Ct. 2054. The Court noted that this case boils down to a simple disagreement between the trial court and the mother regarding what is in the best interests of her children and stated that, "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73, 120 S.Ct. 2054. Therefore, the Supreme Court's plurality decision concluded that the Washington nonparent visitation statute was unconstitutional as applied to this case. *Id.* at 73, 120 S.Ct. 2054.

Although the Supreme Court affirmed the Washington Supreme Court's decision, it is important to mention that the Supreme Court's plurality decision narrowed the reasoning set forth by the Washington Supreme Court. The Supreme Court did not hold the Washington statute unconstitutional, as the state supreme court did, it merely held that it was unconstitutional as applied to Granville. The Supreme Court also did not decide whether the petitioning nonparent is required to make a showing that harm or potential harm will result if the child is not allowed visitation, as did the Washington Supreme Court. The Supreme Court explained:

> Because we rest our decision on the sweeping breadth of § 26.10.160(3) and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect, we agree with Justice Kennedy that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best "elaborated with care." Post, at 2079 (dissenting opinion). Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter.

*Id.* at 73, 120 S.Ct. 2054 (emphasis omitted).

The plurality additionally found that there was no reason to remand this case to the state court, noting that the litigation costs have already been substantial and that since they have concluded that the entry of the visitation order was unconstitutional, additional litigation "would further burden Granville's parental rights." *Id.* at 75, 120 S.Ct. 2054. Justice O'Connor reasoned: "As Justice Kennedy recog-

nizes, the burden of litigating a domestic relations proceeding can itself be 'so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated.' " *Id.* (citing *Id.* at 101, 120 S.Ct. 2054 (Kennedy, J., dissenting)).

Justice Souter concurred in the plurality's decision but wrote separately to note that he would have simply affirmed the Washington Supreme Court's decision that its nonparental visitation statute was unconstitutional and say no more. *Id.* at 76, 79, 120 S.Ct. 2054 (Souter, J., concurring). Accordingly, he would have found the statute's text unconstitutional rather than finding it unconstitutional as applied. Justice Thomas concurred in the plurality's decision but wrote separately to state that the Court did not articulate the standard of review and he would have "appl[ied] strict scrutiny to infringements of fundamental rights." *Id.* at 80, 120 S.Ct. 2054 (Thomas, J., concurring).

Justice Stevens dissented and indicated that he would have denied certiorari because the Washington Supreme Court merely required the legislature to draft a better statute. *Id.* (Stevens, J., dissenting). He noted that the Washington Supreme Court held its statute unconstitutional under the Federal Constitution so it never reached the question of whether the trial court's findings were sufficient under the statute. *Id.* at 81, 120 S.Ct. 2054. He asserted that having granted certiorari, however, the Supreme Court should have adjusted the flaws in the state supreme court's opinion and remanded the case for further proceedings. *Id.* at 84–85, 120 S.Ct. 2054. He opined that the Washington Supreme Court was wrong because the nonparental visitation statute was not unconstitutional in all applications. *Id.* at 85, 120 S.Ct. 2054. Thus, he concluded that

the state court's holding that the statute was unconstitutional was too broad. *Id.* Further, Justice Stevens noted that there is no case law supporting the Washington Supreme Court's conclusion that a nonparent must make a showing of actual or potential harm to the child if the visitation is not granted before a court may order nonparental visitation over a parent's objection. *Id.* at 85–86, 120 S.Ct. 2054. He points out that the fundamental rights of parents in the care, custody and control of their children is not without limits. *Id.* at 87, 120 S.Ct. 2054.

[A] parent's interests in a child must be balanced against the State's long recognized interests as parens patriae, ..., and, critically, the child's own complementary interest in preserving relationships that serve her welfare and protection.

\* \* \*

The constitutional protection against arbitrary state interference with parental rights should not be extended to prevent the States from protecting children against the arbitrary exercise of parental authority that is not in fact motivated by an interest in the welfare of the child.

*Id.* at 88, 120 S.Ct. 2054 (citations omitted). He went on to mention that because the substantive due process case law provides for a presumption that fit parents act in the best interest of their child, it is appropriate to consider whether "the trial court's assessment of the 'best interest of the child' incorporated that presumption." *Id.* at 90, 120 S.Ct. 2054. Justice Stevens concluded his dissent by stating: "It seems clear to me that the Due Process Clause of the Fourteenth Amendment leaves room for States to consider the impact on a child of possibly arbitrary parental decision that neither serve nor

are motivated by the best interests of the child." *Id.* at 91, 120 S.Ct. 2054.

Justice Scalia also dissented, noting that the right of parents to direct the upbringing of their children is an unenumerated right. *Id.* at 92, 120 S.Ct. 2054 (Scalia, J., dissenting). He further stated:

> I do not believe that the power which the Constitution confers upon me as a judge entitles me to deny legal effect to laws that (in my view) infringe upon what is (in my view) that unenumerated right.
>
> \* \* \*
>
> Judicial vindication of "parental rights" under a Constitution that does not even mention them requires ... not only a judicially crafted definition of parents, but also ... judicially approved assessments of "harm to the child" and judicially defined gradations of other persons ... who may have some claim against the wishes of the parents.
>
> \* \* \*
>
> I have no reason to believe that federal judges will be better at this than state legislatures; and state legislatures have the great advantages of doing harm in a more circumscribed area, of being able to correct their mistakes in a flash, and of being removable by the people.

*Id.* at 92–93, 120 S.Ct. 2054.

Finally, Justice Kennedy also dissented for reasons similar to those set forth by Justice Stevens. Justice Kennedy maintained that the conclusion of the Washington Supreme Court that a "harm to the child standard" is required in every nonparental visitation case is too broad because it contemplates that the best interest of the child standard in never appropriate is such cases. *Id.* at 94, 120 S.Ct. 2054 (Kennedy, J., dissenting). He acknowledges that there may be some instances where the best interests of the child standard may not provide sufficient protection to the parents' constitutional rights, but that it is error to conclude that it is inappropriate in every situation. *Id.* He further noted that his main concern with the state court's holding is that it seems to assume that "the parent or parents who resist visitation have always been the child's primary caregivers and that the third parties who seek visitation have no legitimate and established relationship with the child." *Id.* at 98, 120 S.Ct. 2054. Justice Kennedy concluded: "The judgment now under review should be vacated and remanded on the sole ground that the harm ruling that was so central to the Supreme Court of Washington's decision was error, given its broad formulation." *Id.* at 95, 120 S.Ct. 2054.

### Constitutionality of Ind.Code § 31–17–5–1

Crafton argues that the trial court erred in denying her T.R. 60(B)(7) Motion for Relief from Judgment. Relying on *Troxel,* Crafton asserts that in issuing its Order granting Gibson visitation, the trial court failed to apply a presumption that her decision to limit or deny visitation was in the children's best interest. Crafton further argues that I.C. § 31–17–5–1 is unconstitutional as applied to her because it infringes on her fundamental parental rights to make decisions concerning the care, custody and control of her children.

As we have previously mentioned, Ind. Code § 31–17–5–1 provides:

> (a) A child's grandparent may seek visitation rights if:
>
> (1) the child's parent is deceased;
>
> (2) the marriage of the child's parents has been dissolved in Indiana; or
>
> (3) subject to subsection (b), the child was born out of wedlock.

(b) A court may not grant visitation rights to a paternal grandparent of a child who is born out of wedlock under subsection (a)(3) if the child's father has not established paternity in relation to the child.

Here, Crafton's marriage to Bowling was dissolved in Indiana; thus, Gibson, properly sought grandparent visitation under subsection (a)(2) of this statute. Once properly brought, the trial court determined whether Gibson's petition for visitation should be granted. In making this determination, I.C. § 31–17–5–2 requires that:

(a) The court may grant visitation rights if the court determines that visitation rights are in the best interests of the child.

(b) In determining the best interests of the child under this section, the court may consider whether a grandparent has had or has attempted to have meaningful contact with the child.

In this case, the trial court found that it would be in the children's best interest to have visitation with their grandmother. The trial court also found that Gibson had enjoyed a close relationship with her grandchildren up until July 1997, and after July 1997, Gibson contends that Crafton would not allow any meaningful contact between her and her grandchildren. Thus, based on the trial court's findings, it appears that Gibson satisfied the requirements of the statute and the trial court properly exercised its discretion in awarding Gibson visitation.

Nonetheless, Crafton asserts that by not applying a presumption that her decision to deny visitation was in the best interests of her children, the trial court violated her constitutional rights and consequently, Ind.Code § 31–17–5–1 is unconstitutional as applied to her.

We must therefore begin our analysis by noting that Indiana's Grandparent Visitation statute has previously been found to be constitutional by this court. *Sightes v. Barker*, 684 N.E.2d 224 (Ind.Ct.App.1997), *trans. denied; see also Kennedy v. Kennedy*, 688 N.E.2d 1264, 1268 (Ind.Ct.App. 1997), *trans. denied*, and *Lockhart v. Lockhart*, 603 N.E.2d 864, 866 (Ind.Ct.App. 1992). The *Sightes* case involved a child that was born out of wedlock. *Id.* at 225. Paternity was subsequently established in the child's biological father, Michael, and the child's paternal grandmother, Barker, sought grandparent visitation. *Id.* Initially, the child's mother, Sara, objected to Barker's request for visitation but later stipulated to visitation. *Id.* at 226. Sara later married William Sightes who adopted Sara's child. Thereafter, Sara moved to have Barker's visitation terminated. This petition was denied and Sara was found in contempt for denying Barker visitation. Sara subsequently filed a motion to dismiss based upon constitutional grounds. The trial court denied this motion. *Id.* On appeal, Sara argued that the Grandparent Visitation Act is unconstitutional because it allows the State to intrude on the fundamental rights of parents to decide what is best for their child. *Id.* at 228.

At the outset, the *Sightes* court acknowledged that:

It is true that the United States Supreme Court has held that the right to raise one's children is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution.

\* \* \*

However, the constitutionally protected right of family autonomy is not absolute. There are many circumstances related to child health and well-being in which state intervention is constitutional.

*Id.* at 228, 229. The court noted that the State may limit parental rights in a number of ways, including prohibiting the abuse or neglect of children, regulating child labor, requiring children to be vaccinated, requiring school attendance, and requiring that children be restrained while riding in motor vehicles. *Id.* at 229. "Thus, over the years, there has been increased litigation guaranteeing the safety, education and the physical and emotional welfare of children." *Id.* The court also noted that at common law grandparents had no legal right to visitation,[6] but that the legislature determined that "in modern society, it was essential that some semblance of family and generation contact be preserved. As a result, the legislature designed the Act to promote intergenerational contact and strengthen the bonds of the extended family." *Sightes,* 684 N.E.2d at 231.

The court further explained the policy considerations surrounding this issue as follows:

> Grandparents are members of the extended family whom society recognizes as playing an important role in the lives of their grandchildren, the importance of which has been given added meaning by the legislature's policy judgment underlying the Act.

*Id.* at 230.

> Under ordinary circumstances, few would dispute that there are benefits to be derived from the establishment of a bond between grandparent and grandchild. Each benefits from contact with the other. "The child can learn respect, a sense of responsibility and love. The grandparent can be invigorated by exposure to youth, can gain an insight into our changing society, and can avoid the loneliness which is so often a part of an aging parent's life."

*Id.* at 231 (citing *King v. King,* 828 S.W.2d 630, 632 (Ky.1992), *cert. denied,* 506 U.S. 941, 113 S.Ct. 378, 121 L.Ed.2d 289).

In reviewing the constitutionality of a statute, we begin with the presumption that the statute is constitutional. *Chamberlain v. Parks,* 692 N.E.2d 1380, 1382 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* Thus, the burden is on the challenging party to rebut the presumption by a contrary showing. *Id.* "Consequently, all reasonable doubts must be resolved in favor of a statute's constitutionality." *Id.* When examining the constitutionality of a statute under substantive due process, a court usually applies a rational basis test. *See N.B. v. Sybinski,* 724 N.E.2d 1103, 1112 (Ind.Ct.App.2000), *trans. denied.* "[S]ubstantive due process [is] the constitutional doctrine of implementation by courts of the 'promise of the Constitution that there is a realm of personal liberty which the government may not enter.' " *Indiana High School Athletic Ass'n, Inc. v. Schafer,* 598 N.E.2d 540, 551(Ind.Ct.App.1992) (citing *Planned Parenthood of S.E. Penn. v. Casey,* 505 U.S. 833, 847, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992)). Under the rational basis test a statute must have a rational relationship to a legitimate government interest. *Id.* (citations omitted); *see also Clark v. Jeter,*

---

6. In her argument, Crafton suggests that the *Sightes* court improperly recognized that grandparents have a constitutional right to associate with their grandchildren. In actuality, this court has clearly stated that in addition to there being no common law right to grandparent visitation, *Id.* at 231, that grandparents also "do not possess a constitutional liberty interest in visitation with their grandchildren." *Swartz v. Swartz,* 720 N.E.2d 1219, 1222 (Ind.Ct.App.1999); *see also Kennedy,* 688 N.E.2d at 1268. Thus, the only right that has been recognized by this court, is the statutory right certain grandparents have to petition for visitation. *See* I.C. § 31–17–5–1.

486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. Determination by the Legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts.

*Meyer*, 262 U.S. at 400, 43 S.Ct. 625. Nonetheless, "governmental action passes the rational basis test if a sound reason may be hypothesized. The government need not prove the reason to a court's satisfaction." *N.B.*, 724 N.E.2d at 1112 (citing *Northside Sanitary Landfill, Inc. v. City of Indianapolis*, 902 F.2d 521, 522 (7th Cir.1990)).

On the other hand, "[w]hen a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki v. Redhail*, 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978). Under this "strict scrutiny" standard, a statute must serve a compelling state interest and be narrowly tailored to serve that interest. *Phelps v. Sybinsky*, 736 N.E.2d 809, 817 (Ind.Ct.App.2000) (citing *Indiana Dep't of Envtl. Mgmt. v. Chemical Waste Mgmt., Inc.*, 643 N.E.2d 331, 337 (Ind.1994)).

In *Sightes*, we determined that the appropriate standard to apply to a Fourteenth Amendment challenge to Indiana's Grandparent Visitation Act is the "rational basis" standard. *Sightes*, 684 N.E.2d at 231. That is, whether the statute is rationally related to a legitimate government interest. *Id.* We concluded:

[V]isitation rights by grandparents as defined by the Act are less than a substantial encroachment on the parent's fundamental rights or the autonomy of the nuclear family. The Act contemplates occasional, temporary visitation, which may only be allowed if a trial court finds visitation to be "in the best interests of the child."

* * *

The state, in its role as parens patriae, has determined that, under certain circumstances, grandparents should have continuing contacts with the child's development if it is in the child's best interest. Protecting the best interest of a child is unquestionably a proper exercise of the police power. Permitting the natural grandparents to bring the child's custodian into court to determine whether they should be granted the right to visit the child is a procedure reasonably related to the goal of protecting the best interest of the child.

* * *

Therefore, we conclude that, because grandparent visitation as provided by the Act does not unduly burden a parent's autonomous right to raise his or her children, we do not apply strict scrutiny to determine the statute's constitutionality. Rather, we hold the statute to be constitutional because it is rationally related to furthering the legitimate state interest in fostering relationships between grandparents and their grandchildren.

*Id.* at 230, 232. *See also Swartz*, 720 N.E.2d at 1222.

Nevertheless, in *Sightes*, we further concluded that even if the heightened strict scrutiny standard was applied, Indiana's grandparent visitation statute would still

be found to be constitutional. *Id.* at 233. The court reasoned: "We agree that the state has a compelling interest in protecting the welfare of the child. In addition, this interest outweighs the rights of the parent because the Act is not more intrusive than is necessary to promote the welfare of the child." *Id.*

Crafton argues that in concluding as it did, the *Sightes* court incorrectly applied the "rational basis" standard as opposed to the "strict scrutiny" standard. However, as we have noted, in *Sightes*, this court held that under either standard, Indiana's grandparent visitation statute would pass constitutional muster. *Id.* at 233. Moreover, despite Crafton's assertions otherwise, the Supreme Court in *Troxel* did not articulate what standard would be applied in determining whether nonparental visitation statutes violate the fundamental rights of parents; only Justice Thomas, in his concurring opinion, stated that he would apply "strict scrutiny to infringements of fundamental rights." *Troxel,* 530 U.S. at 80, 120 S.Ct. 2054 (Thomas, J., concurring); *see also In re G.P.C.,* 28 S.W.3d 357, 365 (Mo.App.2000), *trans. denied,* (*Troxel* "does not explicitly indicate strict scrutiny as the appropriate standard of review for evaluating non-parental visitation statutes."). Thus, because the issue of what standard should be applied was not reached by the *Troxel* court, it is unnecessary for us to reevaluate the conclusions we reached in *Sightes* with regard to this issue. *Id.,* 684 N.E.2d at 233.

Hence, the issue of whether Indiana's Grandparent Visitation statute is constitutional has already been determined by the court. However, even though we have found this statute to be constitutional, it does not necessarily follow that we are precluded from finding that the statute is unconstitutional as applied to the facts of this case. The concept of "unconstitutional as applied" has been explained as: "[A] court may apply a facially sufficient statute in an unconstitutional manner. 'The practical effect of holding a statute unconstitutional "as applied" is to prevent its future application in a similar context, but not to render it utterly inoperative.' " *Punsly v. Ho,* 105 Cal.Rptr.2d 139, 142, 87 Cal. App.4th 1099, 1104 (2001) (quoting *People v. Rodriguez,* 66 Cal.App.4th 157, 167, 77 Cal.Rptr.2d 676 (1998)). Thus, even though this court has found the statute to be facially sufficient, it may have been applied in an unconstitutional manner in this case, especially in light of the *Troxel* decision.

### Interpretation of Troxel by Other State Courts

In reaching the conclusions we come to today, we reviewed several decisions from other state court jurisdictions that were issued following the Supreme Court's decision in *Troxel.* These states have had the opportunity to review their nonparental visitation statute in light of the *Troxel* decision. Basically, these decisions from other jurisdictions fall into three categories, states that found their statute constitutional, states which found their statute unconstitutional as applied, and states that found their statute unconstitutional on its face.

Included among those states that have found their nonparental visitation statute constitutional is Arizona. The Arizona Court of Appeals concluded in *Jackson v. Tangreen,* 199 Ariz. 306, 18 P.3d 100 (2000), that Arizona's nonparent visitation statute is constitutional on its face. *Id.* at 107. In *Jackson,* the court found that the *Troxel* decision had no impact on Arizona's statute because Arizona's statute is much more narrowly drawn than the Washington statute at issue in *Troxel.* Arizona's nonparental visitation statute limited visitation to grandparents and great-grand-

parents and only when the marriage of the parents is dissolved, one of the parents is deceased or missing, or the child is born out of wedlock. *Jackson,* 199 Ariz. 306, 18 P.3d 100, 103. The statute further requires the trial court to evaluate several specific factors in determining whether visitation would serve the grandchild's best interest including consideration of the motivation of the parties, the relationship between the grandparent and the child, the amount of visitation requested and the impact the visitation would have on the child's activities. *Id.* at 104. Thus, the Arizona Court of Appeals concluded that the statute satisfied the due process concerns articulated in *Troxel. Id.* at 103.

In *Rideout v. Riendeau,* 761 A.2d 291 (Me.2000), the Supreme Judicial Court of Maine held that Maine's Grandparent Visitation Act, as applied to the facts presented, "is narrowly tailored to serve a compelling state interest, and thus does not violate the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution." *Id.* at 294. In this case, the court found that Maine's Act was significantly narrower than the Washington statute in *Troxel.* The court noted that the U.S. Supreme Court in *Troxel* left "for another day a constitutional analysis of statutes with more carefully established protections of parents' fundamental rights." *Rideout,* 761 A.2d at 297. Maine's statute allows grandparents to petition for visitation if they can show "(1) the death of one of the parents; (2) 'a sufficient existing relationship' with their grandchildren; or (3) a sufficient effort to sustain a relationship." *Id.* at 298. Additionally, the Act set forth a litany of considerations in determining the best interests of the children. *Id.* at 298, n. 10. The court noted:

> The constitutional liberty interest in family integrity is not, however, absolute nor forever free from state interference. [citations omitted]. The Due Process Clause is not an impenetrable wall behind which parents may shield their children; rather it provides heightened protection against state intervention in parents' fundamental right to make decisions concerning the care, custody and control of their children.

*Id.* at 299. Thus, the court, applying strict scrutiny, noted that something more than the best interest of the child must be at stake in order to establish a compelling state interest; however, the court found that a showing of harm is not necessary in every situation. *Id.* at 300. The court concluded that because the grandparents in the case had acted in the past as the parents to the child, the State had a compelling interest in allowing the grandparents to seek contact with the child. *Id.* at 302.

The Missouri Court of Appeals came to a similar conclusion in *In re G.P.C.,* 28 S.W.3d 357. The Missouri court found their statute to be narrower, noting that it "provides much greater protection of parents' decision than does the Washington statute because under section 452.402.1(3) the denial must both be unreasonable and have continued for at least ninety days before grandparents may file an action seeking visitation." *Id.* at 364. The Missouri court further distinguished *Troxel* by noting that its statute requires the appointment of a guardian ad litem; thus, the trial judge alone is not making the best interest determination.

Other state courts have also found their nonparental visitation statutes constitutional. See *Lilley v. Lilley,* 43 S.W.3d 703, 2001 WL 359607*7 (Tex.App. April 12, 2001) (The Texas Court of Appeals distinguished *Troxel* by noting that mother wanted to deny all visitation and found that the Texas grandparent access statute

is not unconstitutional on its face or in the district court's application.); *Galjour v. Harris*, 2001 WL 293689*7 (La.Ct.App. March 28, 2001) (The Court of Appeal of Louisiana distinguished *Troxel* by finding that Louisiana's statute is more narrowly drawn. The *Galjour* court noted that "the statute's grant of visitation does not contemplate a significant intrusion upon the child's relationship with the other parent or interference with said parent's fundamental right to make childrearing decisions.").

Conversely, our research revealed a number of other state court decisions that found their state's nonparental visitation statute either unconstitutional on its face or unconstitutional as applied to the particular case before it. In *Dept. of Social and Rehabilitation Services v. Paillet*, 16 P.3d 962, 971 (Kan.2001), the Kansas Supreme Court held that although Kansas' nonparental visitation statute was not facially unconstitutional, it was unconstitutional as applied to the facts of this case. Kansas' statute limits visitation to grandparents and thus, is narrower than the statute in *Troxel*. *Id.* at 969. The court noted that the statute's requirements that the trial court find that visitation is in the best interest of the child and that a substantial relationship existed between the child and the grandparent, were not called into question by the *Troxel* decision. *Id.* at 971. However, the court concluded that within these considerations, the trial court failed to apply the presumption that the mother acted in her children's best interest in deciding not to allow visitation. *Id.* Furthermore, the Kansas Supreme Court concluded that remand would serve no purpose because the grandparents failed to meet their burden of proof under the statute. *Id.*

In *Lulay v. Lulay*, 193 Ill.2d 455, 250 Ill.Dec. 758, 739 N.E.2d 521, 534 (2000), the Supreme Court of Illinois concluded that Illinois' grandparent visitation statute as applied to the facts of this case, where both parents agreed that visitation with the child's paternal grandmother was not in the child's best interest, did not serve a compelling state interest and therefore, unconstitutionally infringed on the parents' fundamental rights to raise their children. Also, in *Brice v. Brice*, 133 Md.App. 302, 309, 754 A.2d 1132 (2000), based on *Troxel*, the Court of Special Appeals of Maryland reversed the trial court's grant of a grandparents' petition for visitation under Maryland's grandparent visitation statute. The court concluded that the statute was unconstitutional as applied to the facts of this case, noting that mother was not alleged to be unfit, and that she had allowed grandparents some visitation. *Id.* However, the *Brice* court did not find Maryland's statute to be facially unconstitutional. *Id.* The court noted that Maryland's statute is narrower than the Washington statute in *Troxel*. *Id.*

Additionally, in *Kyle O. v. Donald R.*, 102 Cal.Rptr.2d 476, 85 Cal.App.4th 848 (2000), the California Court of Appeal, held that under *Troxel* the trial court's order granting grandparents scheduled visitation violated father's "parent rights guaranteed by the due process clause of the Fourteenth Amendment." *Id.*, 85 Cal.App.4th at 864, 102 Cal.Rptr.2d 476. The court reasoned that father was a fit parent who had not sought to end all grandparent visitation, and the dispute was basically over the amount of visitation grandparents would have. Thus, the court concluded that father "had the fundamental right as a parent to prefer flexible unscheduled visitation that would not interfere too much with his quality parenting time ..." Id. at 863–864, 102 Cal.Rptr.2d 476.

Finally, other state courts have also found their nonparental visitation statutes

to be constitutionally infirm. *See Punsly v. Ho,* 105 Cal.Rptr.2d 139, 147, 87 Cal. App.4th 1099, 1110 (2001) (Relying on *Troxel,* the California Court of Appeal concluded that the trial court's application of California's nonparental visitation statute over mother's objections violated mother's fundamental parental rights where the mother was fit and was willing to voluntarily schedule visitation and the trial court applied an erroneous presumption that visitation with the paternal grandparents was in the child's best interest.); *Belair v. Drew,* 776 So.2d 1105, 1107 (Fla. Dist.Ct.App.2001) (Florida's Fifth District Court of Appeal discussed *Troxel* and held that Florida's grandparent visitation statute is facially unconstitutional under the privacy rights protected by Florida's Constitution.); *Neal v. Lee,* 14 P.3d 547 (Okla. 2000) (The Oklahoma Supreme Court found that pursuant to *Troxel,* the award of grandparent visitation in this case under Oklahoma's grandparent visitation statute violated the parents' federal constitutional rights as the parents objected to visitation and the grandmother made no showing of harm.). See also *Hertz v. Hertz,* 717 N.Y.S.2d 497, 500, 186 Misc.2d 222, 226 (2000) (New York's grandparent visitation statute violated parents' substantive due process rights because it allowed the trial judge to solely determine best interest and accorded parents' decision of children's best interest no presumption of validity); *but see Fitzpatrick v. Youngs,* 717 N.Y.S.2d 503, 186 Misc.2d 344, 349 (2000) (Discusses *Troxel* and notes that New York's statute is not as broad as the statute in *Troxel.* Denies motion to dismiss petition for grandparent visitation.) and *Smolen v. Smolen,* 713 N.Y.S.2d 903, 185 Misc.2d 828, 835 (2000) (Denying motion to dismiss petition for grandparent visitation prior to evidentiary hearing.).

With these decisions in mind, we next consider the particular facts of the case before us.

### Application of Troxel to Ind.Code § 31–17–5–1

Moving to the specifics of the trial court's Order, we note that in ruling on Crafton's T.R. 60(B)(7) motion, the trial court found that Indiana's Grandparent Visitation statute is much narrower than the Washington statute which the *Troxel* court found to be "breathtakingly broad." *See Troxel,* 530 U.S. at 66, 120 S.Ct. 2054 (O'Connor, J., plurality opinion). The Washington statute allowed "any person" at "any time" the right to seek visitation and allowed the courts the right to grant visitation when it would "serve the best interests of the child." Wash.Rev.Code § 26.10.160(3). On the other hand, Indiana's statute limits the right to petition for visitation to grandparents alone, and only under certain circumstances. *See* I.C. § 31–17–5–2. In Indiana, a grandparent may only petition for visitation when the grandchild's parent is deceased, the grandchild's parents are divorced, or the grandchild was born out of wedlock. *Id.* Further, if paternal grandparents seek visitation of a child born out of wedlock, the paternity of the child's father must first be established. *Id.*

Once this narrow class of petitioners is established for purposes of standing, the trial court then applies a best interest of the child standard and considers whether the petitioning grandparent had or attempted to have a meaningful relationship with the child. I.C. § 31–17–5–2. Furthermore,

> under the existing statutory scheme, a court cannot grant visitation until a verified petition is filed in a circuit or superior court, a hearing is conducted, a decree is entered setting forth the trial court's findings and conclusions, and a

finding is made that the best interests of the children will be served by granting visitation. [I.C. §§ 31–17–5–2 to 31–17–5–7]. In addition, the visitation schedule is in no way permanent, but may be modified as necessary to meet the evolving best interests of the children. [I.C § 31–17–5–7]. Such judicial oversight adequately protects the integrity of the family while promoting the welfare of the children. Fortunately, it is not a common occurrence for this statute to be called into play, but when it is, the parties are afforded ample protection to preclude either injustice or an unwarranted intrusion into the fundamental liberty of the parents and child.

*Sightes*, 684 N.E.2d at 231.

Thus, we do not believe that Indiana's Grandparent Visitation statute has the overbreadth problem that afflicted the Washington statute. Nonetheless, the *Troxel* court did not rely solely on the breadth of the Washington statute in finding it unconstitutional as applied, especially in light of the fact that although the Washington statute allowed for any person to petition for visitation, the petitioners in *Troxel* were the children's grandparents so the breadth of the statute was not the focal point of the case.

In addition to being concerned with the breadth of the statute, the Supreme Court was also concerned that "a parent's decision that visitation would not be in the child's best interest is accorded no deference." *Troxel*, 530 U.S. at 67, 120 S.Ct. 2054. Because we presume that a fit parent acts in his or her child's best interest,[7] a trial court must give special weight to a fit parent's decision regarding nonparental

visitation. *Id.* at 68, 69, 70, 120 S.Ct. 2054. Our court has noted that:

[T]he Act does not presume that grandparent visitation is necessarily in the children's best interest. Instead, the burden is on the grandparent, as the petitioning party, to demonstrate by a preponderance of the evidence that court-ordered visitation is in the children's best interest. *See* I.C. § 31–1–11.7–3. If such a showing is made, it falls to the court to evaluate the evidence, assess the circumstances, and carefully devise a visitation schedule that is in the children's best interest.

*Sightes*, 684 N.E.2d at 230. However, the *Troxel* decision requires us to take this process one step further and presume that a fit parent's decision is in the best interest of the child. *Troxel*, 530 U.S. at 69, 120 S.Ct. 2054 (O'Connor, J., plurality opinion). Thus, the best interests determination cannot be left solely to the trial court's discretion without considering and giving deference to a fit parent's decision. *Id.* at 67, 72–73, 120 S.Ct. 2054. "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73, 120 S.Ct. 2054.

In the case before us, there is no allegation that Crafton is not a fit parent. As such, the trial court was required under *Troxel* to give special weight to her decision not to allow Gibson visitation with her minor children. That said, it is important to note that this presumption is rebuttable. *Id.* at 87, 120 S.Ct. 2054 (Stevens, J., dissenting). Thus, a grandparent seek-

---

**7.** A majority of the *Troxel* court appeared to agree with this proposition. *Id.* at 69, 120 S.Ct. 2054 (O'Connor, J., plurality opinion); *Id.* at 78, 120 S.Ct. 2054 (Souter, J, concurring opinion); *Id.* at 80, 120 S.Ct. 2054 (Thomas, J., concurring opinion); *Id.* at 87, 120 S.Ct. 2054 (Stevens, J., dissenting opinion); *Id* at 97–98, 120 S.Ct. 2054 (Kennedy, J., dissenting opinion).

ing visitation has the burden of rebutting the presumption that a decision made by a fit parent to deny or limit visitation was made in the child's best interest. Here, Gibson had the burden of rebutting the presumption that Crafton's decision not to allow visitation was in her children's best interest.

▆ Additionally, the *Troxel* court indicated that a trial court should give some weight to a fact that a parent has agreed to some visitation. *Id.* at 71, 120 S.Ct. 2054. The significance of this factor is that once a parent agrees to some visitation, the dispute is no longer over whether the grandparent will have any access to the child, but instead over how often and how much visitation will occur. The *Troxel* court noted that many states do not even allow nonparent visitation unless a parent has unreasonably denied visitation. *Id.* In *Swartz*, our court found that where a mother had not denied grandparents access to the child, it was an abuse of discretion to grant the grandparents' request for overnight visitation over mother's objection. *Id.*, 720 N.E.2d at 1222. We noted that there are different interests at stake in cases where the parties cannot agree to the terms of visitation as opposed to cases were no access has been allowed. *Id.* In the later case, a grandparent would be pursuing the right to have a relationship with the child, while the former case boils down to a mere disagreement between parent and grandparent over how much access is appropriate. *Id.*

The evidence in this case is in conflict, but it is clear that from July 1997 to the time of the final hearing in April 1998, Gibson did not have any significant contact with her grandchildren. However, the trial court's conclusion that Gibson "claims" that Crafton had not permitted any meaningful contact with the children, leaves uncertain whether in fact Gibson was denied meaningful access to the children by Craf-

ton. At the hearing on Gibson's Petition for Grandparent Visitation, Crafton reluctantly agreed to allow Gibson some visitation each month. Thus, it is unclear whether the trial court decided that Crafton had voluntarily agreed to some visitation and if so, whether the trial court gave this offer of visitation any weight.

In the trial court's Order denying Crafton's T.R. 60(B)(7) motion, the trial court stated: "This Court is not prepared to declare Indiana Grandparent Visitation Law unconstitutional nor find that it is per se violative of *Troxel.*" (R. 201). The trial court also found that even if *Troxel* is not distinguishable because of the differences in the statutes, "applying the *Troxel* analysis, this Court finds its decision well supported by the evidence and a decision that was best for the children." *Id.*

The trial court further concluded that:

The reality of these grandparental visitation cases is clear. They involve cases between a parent and a grandparent who are unable or unwilling to agree upon a resolution that upholds the best interest of their child(ren)/grandchildren. Those able to agree never reach court in the first place. Once they reach a trial court, a trial court is called upon to put aside the competing, often self-motivated, interests of the adults and find a solution that is best for the children, often in situations created by the competing adults in the first place. The General Assembly of this State has enacted legislation, and the courts of Indiana have repeatedly affirmed the intent of the legislation, to protect grandparents rights to visit their grandchildren in the most acrimonious and potentially hostile of situations, death, divorce, or out-of wedlock births.

*Id.*

▆ Although the trial court indicated that it applied a *Troxel* analysis to this

case, it appears from the Record and the trial court's reasoning here that no special weight was given to Crafton's decision concerning grandparent visitation. Furthermore, the Record is undeveloped with regard to whether the trial court concluded that Crafton had denied Gibson all access to the children or had offered some visitation. Without this determination, we cannot discern whether any weight was given to Crafton's offer of visitation. Thus, with the Record that was before the trial court, we do not believe that the trial court could have properly undertaken an accurate *Troxel* analysis of this case.

Consequently, although we agree with the *Sightes* decision that I.C. § 31–17–5–2 is constitutional on its face, we conclude that the trial court failed to apply the presumption as now required by *Troxel* that a fit parent's decision with regard to grandparent visitation is made in the children's best interest. The trial court also failed to address whether Crafton was entitled to have any weight given to her alleged offers of visitation. It is clear from the trial court's analysis that the court took a neutral stance, which was proper under *Sightes*, in determining the best interests of the children. Now however, in light of the *Troxel* decision, if a parent is fit, a trial court is required to give special weight to the parent's decision regarding grandparent visitation. Again, we note that this presumption is rebuttable and the petitioning grandparent has the burden of rebutting this presumption.

Accordingly, we remand this matter to the trial court for a new hearing in light of our decision herein. We are mindful that the Supreme Court in *Troxel*, declined to remand that case for further proceedings. The *Troxel* plurality reasoned that to remand this case to the state court and require Granville to incur the expense of further litigation "would further burden Granville's parental rights." *Id.* at 75, 120 S.Ct. 2054. Also, some of the decisions from other jurisdictions that we previously discussed have followed *Troxel* in declining to remand their nonparental visitation cases to the trial court for further proceedings. *Paillet,* 16 P.3d at 970; *Kyle O.,* 85 Cal.App.4th at 864, 102 Cal.Rptr.2d 476.

Here, we conclude that remand is appropriate because, unlike the record in *Troxel,* the Record in this case has not been adequately developed in order to allow Gibson a fair opportunity to present evidence to attempt to rebut the presumption that Crafton's decision was in her children's best interest. At the time of the original hearing on Gibson's Petition for Grandparent Visitation, Gibson was unaware that she was required to disprove this presumption, so it would be inequitable to judge whether she has rebutted the presumption based on the evidence presented at the prior hearing.

Moreover, as it has been over three years since the original hearing, to make a proper determination under the requirements of *Troxel,* the trial court needs to hear evidence regarding the current situation between the parties and the children, Crafton's current decision with regard to grandparent visitation (assuming her fitness is not at issue), and whether or not Crafton is willing to voluntarily allow Gibson any access to the children. Evidence on all of these issues is necessary if the trial court is going to apply the appropriate weight to evidence as required by *Troxel.* It would be unfair to the parties to ask the trial court to determine these issues based on a Record that was not made with these issues in mind.

## CONCLUSION

Therefore, we conclude that Crafton has presented a *prima facie* showing of reversible error demonstrating that the trial

court abused its discretion in denying her T.R. 60(B)(7) Motion for Relief from Judgment. Consequently, we remand this matter to the trial court for a new hearing on Gibson's Petition for Grandparent Visitation. We instruct the trial court to apply special weight to Crafton's decision regarding Gibson's request for visitation. We further instruct the trial court to give some weight to any voluntary offer of visitation made by Crafton, if the trial court concludes that such an offer was made.

Reversed and remanded with instructions.

SULLIVAN, J., and FRIEDLANDER, J., concur.